IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL A. SULLIVAN, | ) | 4:15CV3014 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| JEFF DAVIS; GREG LONDON; | ) | |
| and JUNE WESTLAND, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on four motions that have been filed with respect to the plaintiff's *pro se* § 1983 action, including a motion for summary judgment in which the defendants claim qualified immunity. The plaintiff, Michael A. Sullivan ("Sullivan") is currently incarcerated at the Tecumseh State Prison. The defendants, Jeff Davis ("Davis"), Greg London ("London"), and June Westland ("Westland"), who are sued in their individual capacities, are alleged to have been deliberately indifferent to Sullivan's medical needs while he was being held in the Sarpy County Jail between November 24, 2009, and March 16, 2010. During this period of time, Davis was the county sheriff; London was a captain with the sheriff's department who managed day-to-day general operations at the jail; and Westland was a nurse employed at the jail.[1]

### A. *Plaintiff's Motion for Reconsideration (Filing No. 19)*

In a memorandum and order entered on September 1, 2015, the court denied the plaintiff's request for appointment of counsel without prejudice to reassertion.

---

[1] Official capacity and state-law claims alleged against these defendants were dismissed by the court on September 1, 2015, as were all claims alleged against three other named defendants, the Sarpy County Jail, Pamela Reinke and "Doctor Dreesen" (Filing No. 17).

Plaintiff thereafter filed a motion for reconsideration, stating that he is without financial resources to hire an attorney, is unable to conduct research on his own effectively, and has only limited access to the prison library.

Sullivan's Fourteenth Amendment claim is not complex, either factually or legally, and he has displayed an ability to prepare understandable pleadings and motions in support of his civil action. Sullivan has not demonstrated that he is unable to investigate the facts. Consequently, his motion for reconsideration is denied. *See Ward v. Smith*, 721 F.3d 940, 942-43 (8th Cir. 2013) (discussing factors to consider in deciding whether to appoint counsel).

### B. Defendants' Motion to Strike (Filing No. 28)

The defendants filed their motion for summary judgment on September 18, 2015. In response, Sullivan filed four documents: (1) "Plaintiff's Brief in Support of Opposition to Defendant's [*sic*] Motion for Summary Judgment" (Filing No. 24); (2) "Plaintiff['s] Reply, Answer and Objection to Defendants' Summary" (Filing No. 25); and (3) "Declaration in Opposition to Defendants['] Motion for Summary Judgment" (Filing No. 26); and (4) "Plaintiff's Statement of Disputed Factual Issues" (Filing No. 27). On October 26, 2015, the defendants filed a motion to strike all four documents (Filing No. 28). Four basic objections are raised in the motion.

### 1. Untimeliness

First, the defendants object that the filings are untimely. Sullivan's response to the defendants' summary judgment motion was due on October 13, 2015. *See* NECivR 7.1(b)(1)(B) ("A brief opposing a motion ... for summary judgment must be filed and served within 21 days after the motion and supporting brief are filed and served."); NECivR 6.1 (3-day mailing rule applies); Fed. R. Civ. P. 6 (a)(1)(C) (when period ends on legal holiday, extend to next day). The filings were received and docketed by the clerk of the court on October 19, 2015, but a certificate of service

indicates they were mailed to the court on October 14, 2015, which is the effective filing date if Sullivan is given the benefit of the "prison mailbox rule." *See Sulik v. Taney County, 316 F.3d 813, 815 (8th Cir. 2003)* (holding that the prison mailbox rule governs the determination of when a prisoner's civil complaint has been filed), *rev'd in part on other grounds*, 393 F.3d 765 (8th Cir. 2005). Although the filings are untimely, the defendants have not shown they were prejudiced by the short delay, regardless of whether the filings were 1 or 6 days late.

### 2. Prohibited Response

Second, the defendants object that Filing No. 25 ("Plaintiff's Reply, Answer and Objection") fails to comply with Nebraska Civil Rule 7.1(b)(1)(A), which provides in part:

> The party opposing a motion must not file an "answer," "opposition," "objection," or "response," or any similarly titled responsive filing. Rather, the party must file a brief that concisely states the reasons for opposing the motion and cites to supporting authority.

NECivR7.1(b)(1)(A). The defendants contend this filing is superfluous and not a response permitted by the local rule. This is objection is well-taken. The filing is without substance, as Sullivan merely asserts in conclusory fashion that the defendants are not entitled to qualified immunity and requests that their motion for summary judgment be denied. Consequently, Filing No. 25 will be stricken.

### 3. Lack of Evidence

Third, the defendants object that Filing No. 24 ("Plaintiff's Brief") and Filing No. 27 ("Statement of Disputed Facts") fail to comply with another provision of Nebraska Civil Rule 7.1(b)(1)(A), which states that "[t]he brief must not recite facts unless supported as stated in Nebraska Civil Rule 7.1(b)(2)." NECivR7.1(b)(1)(A). Rule 7.1(b)(2) requires the filing of supporting evidentiary materials and states that

"[a] factual assertion in the opposing brief must cite to the pertinent page of the pleading, affidavit, deposition, discovery material, or other evidence on which the opposing party relies." NECivR7.1(b)(2)(A). In addition, the defendants object that Filing Nos. 24 and 27 violate Nebraska Civil Rule 56.1(b)(1), which provides in part:

> The party opposing a summary judgment motion must include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed.

NECivR 56.1(b)(1).

The defendants contend each of these filings "does not support recited facts with any evidence, [and] does not respond to the movant's statement of facts" (Filing No. 28, ¶¶ 1, 4). While the defendants are correct in stating that the filings are non-compliant, they will not be stricken, but will only be given such consideration as they deserve under the local rules and under Federal Rule of Civil Procedure 56.

### 4. Inadmissible Evidence

Fourth, and finally, the defendants object that Filing No. 26 ("Plaintiff's Declaration") "contains improper legal argument, the opinions drawn therein are speculative, based on erroneous summaries of evidence, are asserted without personal knowledge, and/or are without foundation, and are therefore inadmissible under Fed. R. Civ. P. 56(c)(2), (c)(4) and (e), as well as NECivR 7.1(b)(2)(C)" (Filing No. 28, ¶ 3). The defendants further object that "Plaintiff is not competent to testify as an expert witness under Fed. R. Ev[i]d. 701[2] as to causation or medical diagnosis issues" (*id.*).

---

[2] Rule 701 concerns opinion testimony by lay witnesses.

Sullivan's declaration, which is made under penalty of perjury, contains 10 numbered paragraphs, which are set forth below without alteration. The defendants object to each and every paragraph. Their objections will be addressed below on a paragraph-by-paragraph basis.

1. I'am the plaintiff in the abouve entittled case matter. I make this declaration in opposition to defendants motion for summary judgement on my claims concerning deliberate indiffereance to my serious medical needs violated by defendants Davis, London, and Westland.

The defendants generally object to paragraph 1 as being a legal argument. The objection is overruled.

2. Defendants attempt to postulate, via affidavits, that they (1) were not involved in the decision-making process concerning my medical request, issues, and treatment decided by Head Nurse Pam Reinke; (2) never acted with any malice or ill will toward Plaintiff via medical needs for treatment; (3) did not have personal contact with plaintiff, nor communicated with him via his medical needs, issues, or treatment; (4) were not apprised of plaintiff's Medical foot condition, plantar fascitis until later into his incarceration at Sarpy County Jail; (5) numerous times over denied plaintiff's request for an extra blanket and special shoes based upon securty and safety reasons; (6) were not aware of the many request made by plaintiff for pain medication and the removal of his cam boot for proper healing of his injured foot; and (7) would have had the ability to correct Head Nurse Pamela Reinkes omission and error in failing to make an inquiry to the V.A. Hospital comporting to follow up for appointment date scheduling paintiff thereto, as admitted by Reinke. Such statements sworn to by defendants Davis, London, and Westland, are immensely disputed and embellished.

The defendants also interpose a general objection to paragraph 2 as being "nothing more than some legal argument of the doctrine of 'respondeat superior,' ...." (Filing No. 29 at CM/ECF p. 4). The objection is sustained.

3. Defendants are not entittled to summary judgement, in that there does not exist genuine issues of material fact that should be resolved. The issues are identified in the accompanying Statement of Disputed Factual Issues filed be plaintiff. Facts are setout in this Declaration.

The defendants object that paragraph 3 "is not a factual statement supported by any citation to the record" (Filing No. 29 at CM/ECF p. 4). The objection is sustained.

4. Plaintiff was a pretrial detainee with the Sarpy County Jail from November 24, 2009, til March 16, 2010. Upon his inception on November/24/2009, Plaintiff apprised defendants Davis and London about his injury. Defendant Westland performed the initial screening on Plaintiff. The injuries wre detailed and expressed to Westland, inclusive of his plantar fascitis and on-going treatment yet to be endured with V.A. Hospital.

The defendants object that the second sentence of paragraph 4, which states that Sullivan apprised Davis and London of his injury, "is an unsupported conclusion and speculation, without a factual basis and without proper foundation" (Filing No. 29 at CM/ECF p. 5). The objection is sustained.

5. Defenadants Davis, and London were duly informed that there was an initial discrepancy regarding his cam boot during intake.

The defendants raise the same objection to paragraph 5 (Filing No. 29 at CM/ECF p. 5). The objection is sustained.

6. Plaintiff's request for Sarpy County Jail Officials, particularly Westland, to contact V.A. Hospital to determine what medical needs he was being treated for and what Medication(s) and treatment was needed, Westland refused to contact V.A. Hospital initially during intake. So, Plaintiff was able to talk to London and apprise him of the information conveyed to Westland. Eventually, sometime later Head Nurse Reinke made contact with the V.A. Hospital (as directed to her by London, and required via standard opperating procedures promulgated by Davis).

The defendants object that paragraph 6 "is not specific as to the time of any such request, or any medical records corroborating such bare assertions made as to time, manner, or date of any such alleged contacts" (Filing No. 29 at CM/ECF p. 5). The objection is sustained with respect to the final second and third sentences, which will be stricken; the objection is overruled with respect to the first sentence.

7. Because of the delay in contacting V.A. Hospital palintiff was forced to endure pain for the first 7 days incarcerrated in Sarpy County Jail; not being able to comfortly walk in his cam boot, as swelling had started to incur.

The defendants object that "Plaintiff fails to cite to the record for his claims made in paragraph 7 ..., and his assertions therein are without foundation (Filing No. 29 at CM/ECF p. 6). The objection is sustained with respect to the introductory phrase, "Because of the delay in contacting V. A. Hospital," but otherwise is overruled.

8. The constant wear and use of cam boot worsen plaintiff's injury, as walking became unbearable, where upon he made request to obtain crutches, the request was denied by London and Reinke; according to Sheriff's (Davis) policy, as told to Plaintiff.

The defendants object that paragraph 8 is "unsupported by any medical evidence, and is without sufficient foundation" (Filing No. 29 at CM/ECF p. 6). The objection is sustained for lack of foundation with respect to all language following the word "unbearable," and such language will be stricken; in all other respects, the objection is overruled.

9. Pamels Reinke and Defendants London, Davis and Westland refused via request and via comminication, to allow plaintiff to acquire prescribed shoes (like the trustee's wear) for healing purposes of his foot injury at his expense.

The defendants object that paragraph 9 because "Plaintiff cites to no record evidence to support this paragraph, and it is speculative, without proper foundation" (Filing No. 29 at CM/ECF p. 7). The objection is sustained for lack of foundation, and the paragraph will be stricken.

> 10. Contrary to defendants affidavit's, during the events described above and at all relevant times wherein plaintiff was under defendants care, custody and control, plaintiff clearly apprised each defendant, Davis, London, Westland, Pamels Reinke, Doctor Reeson, and the Sarpy County Jail Officials, personally durung verbal communications and written correspondences, of his serious Medical needs (i.e. unbearable pain, inibility to walk comfortably, the need for followup with the V.A. Hospital for additional and continual exarnination(s), etc.) and alternatives that would possibly alleviate his condition.

The defendants object that paragraph 10 is "without proper or sufficient foundation, and consists of mere conclusory allegations" (Filing No. 29 at CM/ECF p. 7). The objection is sustained, and the paragraph will be stricken.

*C. Plaintiff's Request for Oral Testimony (Filing No. 30)*

On November 12, 2015, approximately one month after the deadline for responding to the defendants' motion for summary judgment, Sullivan mailed to the court and served on the defendants a "request for oral testimony." The document was received and docketed as a motion by the clerk on November 16, 2015. The motion will be denied for several reasons.

First of all, the motion is untimely. "Any request for oral argument or for an evidentiary hearing by an opposing party must be presented by a motion filed no later than the deadline for filing an opposing brief." NECiv 7.1(d).

Second, Sullivan indicates that the purpose of the hearing would be to allow him to present testimony and to examine "London, Davis, Westland, and other Sarpy

County Jail Employees of whom submitted Affidavits in support of Defendants[']
motion for summary judgement" (Filing No. 30, ¶ 2). Even assuming that Federal
Rule of Civil Procedure 56 permits an opposing party to request an evidentiary
hearing on a summary judgment motion, Sullivan has not demonstrated a need for
such a hearing. He asserts that "[o]ral testimony would help to further clarify and
resolve the disputable allegations and facts presented by the parties (Filing No. 30, ¶
3), but "a judge's function at summary judgment is not to weigh the evidence and
determine the truth of the matter but to determine whether there is a genuine issue for
trial." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (per curiam) (internal marks
omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).
Whether there is a genuine issue for trial can be determined by reviewing affidavits
and other materials in the record, without the need for live testimony.

Third, while Sullivan further claims that "[o]ral Testimony would avail and
divulge sufficient indicia of reliability commensurable thereto genuine issue(s) of
material fact" and show that the defendants' evidence is "baseless, unreasonable,
meritless" (Filing No. 30, ¶ 5), "[c]redibility determinations, the weighing of the
evidence, and the drawing of legitimate inferences from the facts are jury functions,
not those of a judge." *Gray v. FedEx Ground Package Sys., Inc.*, 799 F.3d 995, 999
(8th Cir. 2015) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.
2011) (en banc)). In deciding a motion for summary judgment, the court "does not
weigh the evidence or decide credibility." *United States ex rel. Miller v. Weston
Educ., Inc.*, 784 F.3d 1198, 1206 (8th Cir. 2015)

Fourth, Sullivan also asserts that "[o]ral Testimony is necessary in that it would
better apprise the Court of each parties rationale and thesis, as it relates to the facts of
this matter" (Filing No. 30, ¶ 5). This appears to be a request for oral argument, as
opposed to a request for an evidentiary hearing. However, the court generally does not
hear oral argument on summary judgment motions, *see* NECivR 56.1, and Sullivan
has failed to demonstrate any particular need for oral argument in this case. The court
is satisfied the matter can be decided fairly on written briefs.

Finally, to the extent Sullivan may be claiming that he is unable to present facts essential to justify his opposition to the defendants' motion without the court holding an evidentiary hearing, *see* Fed. R. Civ. P. 56(d), he has not made the required showing by affidavit or declaration. Sullivan merely asserts that he should be allowed an "impartial opportunity to explain his previous statements, factual allegations, and why there exist justifiable reason and rationale therewith" (Filing No. 30, ¶ 6).

### D. Defendants' Motion for Summary Judgment (Filing No. 20)

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), and the court must not weigh evidence or make credibility determinations, *Anderson*, 477 U.S. at 249. However, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

"A mere scintilla of evidence is insufficient to defeat summary judgment and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010) (internal quotation marks and citations omitted). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012) (internal quotes and citations omitted).

"Determining the question of qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Santiago v. Blair*, 707 F.3d 984, 989 (8th Cir. 2013). Courts may address either prong of the analysis first, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

An arrestee's or pretrial detainee's claim of denial of medical care is properly analyzed under the Due Process Clause of the Fourteenth Amendment, *see Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012) (citing *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009); *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 905 & n. 3 (8th Cir. 1999), by applying "the deliberate-indifference standard that governs claims brought . . . under the Eighth Amendment." *Hall v. Ramsey Cty.*, 801 F.3d 912, 920 (8th Cir. 2015) (quoting *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)). "Whether an official was deliberately indifferent requires 'both an objective and a subjective analysis.'" *Id.* (quoting *Scott v. Benson*, 742 F.3d 335, 339-40 (8th Cir. 2014).

" Under the objective prong, [the plaintiff] must establish that he suffered from an objectively serious medical need." *Jackson*, 756 F.3d at 1065. "To be objectively serious, a medical need must have been 'diagnosed by a physician as requiring treatment' or must be 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Scott*, 742 F.3d at 339-40). "Under the subjective prong, [the plaintiff] must show that an official 'actually knew of but deliberately disregarded his serious medical need.'" *Id.* (quoting *Scott*, 742 F.3d at 340). "This showing requires a mental state 'akin to criminal recklessness.'" *Id.* (quoting *Scott*, 742 F.3d at 340). "Consequently, [Plaintiff] must show 'more than negligence, more even than gross negligence' to evince deliberate indifference." *Id.* (quoting *Fourtev v. Faulkner Cnty.*, 746 F.3d 384, 387 (8th Cir. 2014)).

### 1. Controverted and Uncontroverted Facts

Sullivan has declared that he was a pretrial detainee with the Sarpy County Jail from November 24, 2009, until March 16, 2010; that Westland performed an initial screening, at which time Sullivan described his injuries, including plantar fascitis, and informed her of his on-going treatment at V.A. Hospital; that during intake he requested Westland to contact the V.A. Hospital, but she refused; and that during the first 7 days of incarceration at the jail, Sullivan experienced pain and swelling in his foot, and could not walk comfortably (Filing No. 26, as stricken in part). Sullivan has presented no admissible evidence tending to establish that either Davis or London were aware of, let alone deliberately indifferent to, his medical needs, and the defendants' evidence disproves any Fourteenth Amendment claims that have been alleged against Davis and London.

The defendants' evidence also indicates that Westland had no involvement in Sullivan's intake at the Sarpy County jail, and, in any event, that the V.A. Hospital was contacted on November 24, 2009; that Sullivan's medical records were received from the V.A. the following day; and that such records did not mention plantar fascitis. The defendants' evidence directly contradicts Sullivan's statement that he

described a plantar fascitis condition during his intake at the jail, and indicates this condition was first disclosed on February 19, 2010. While there are some disputed facts regarding the claim against Westland, she is entitled to summary judgment because there was no actual delay in contacting the V.A Hospital and Sullivan has failed to show that his plantar fascitis constituted a serious medical need or that Westland deliberately disregarded the condition, even assuming that she was told about it by Sullivan.

The defendants' evidence, as summarized in their supporting brief,[3] is as follows:

1. The Sarpy County Jail is a division/unit of the Sarpy County Sheriff's Office, within the County of Sarpy, which is the third largest county in the State of Nebraska by population. (Davis Supp. Affd. [Filing No. 21-8] ¶1). The entire Sheriff's Office consists of over 230 sworn law enforcement and civilian employees. (Davis Supp. Affd. ¶1). The Sarpy County jail facility houses approximately 145-170 prisoners at a given time. (Davis Supp. Affd. ¶4).

2. Sheriff Jeff Davis oversees the entire Sarpy County Sheriff's Office, and as such, his days are primarily consumed with handling administrative functions. (Davis Supp. Affd.¶2-3). In the usual course of business, he does not have any personal interactions with inmates at the jail, as he delegates a Captain and Lieutenant to oversee each division/unit of the Sheriff's Office, including the Jail Division. (Davis Supp. Affd. ¶1-4).

---

[3] Under the court's local rules, "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). "The statement of facts should consist of short numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a)(2) (underlining in original). The defendants' statement of facts is in compliance with the rule. "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1) (underlining in original).

3. In 2009-2010, the Captain overseeing the Sarpy County Jail was Defendant Greg London. (Davis Supp. Affd. ¶4); (London Affd. [Filing No. 21-1] ¶1).

4. Defendant London does not have professional medical training, at all relevant times he was primarily responsible for overall security and operational aspects of the facility, while relying upon the hired professional nursing staff to address the specific medical needs of inmates, unless a request was specifically directed to him. (London Supp. Affd. [Filing No. 21-9] ¶1); (Westland Affd. [Filing No. 21-12] ¶3).

5. On November 24, 2009, Sarpy County employed a staff of four registered nurses to provide care to inmates at the Sarpy County Jail, including Defendant June Westland and head nurse Defendant Pamela Reinke,[4] who were part of the larger civilian staff of the Sheriff's Office. (Reinke Affd. [Filing No. 21-4] ¶1-2); (London Affd. ¶2); (Davis Supp. Affd. ¶2).

6. At all times pertinent to the Complaint, Defendant nurse June Westland was directly supervised by head Defendant jail nurse Pamela Reinke. (Reinke Affd. ¶1-2); (Westland Affd. ¶1); (Davis Supp. Affd. ¶2).

7. At all pertinent times, the Sarpy County Jail maintained and followed numerous written standard operating procedures to ensure that the medical needs of its inmates/detainees were being met, which included the following: 1) an intake deputy conducted a medical questionnaire with new detainees, 2) a registered nurse staff member would promptly follow up with a medical screening evaluation following intake, 3) nursing staff would follow up with an inmate's outside providers as applicable, 4) Nurse Request Forms were made available to detainees to express their medical concerns, and 5) daily "sick time" calls were scheduled, where a detainee/inmate would personally see and be evaluated by a member of the registered nursing staff to address any

---

[4] Nurse Reinke was named as a defendant in an amended complaint filed on February 2, 2015. All claims alleged against her, including a time-barred § 1983 claim, were dismissed by the court on September 1, 2015 (Filing No. 17).

expressed medical needs of the inmates. (London Supp. Affd. ¶2, 2.1, 2.2, 2.3, 2.4, 3, 4, Ex. A, B [Filing Nos. 21-10, 21-11]).

8. Prior to Plaintiff's Complaint herein, Sheriff Davis had never been advised of any issue that would call into question the adequacy of the jail facility's policies or procedures to address inmate medical needs. (Davis Supp. Affd. ¶7-8).

9. On November 24, 2009, Plaintiff was booked into the Sarpy County Jail upon a felony criminal charge of burglary. (Reinke Affd. ¶23, Ex. C, p. 3-4); (Amended Compl.,¶21).

10. Plaintiff Sullivan was afforded and participated in all of the above-referenced written standard operating procedures relating to inmate medical needs during his approximately three and one-half month period of incarceration at the Sarpy County Jail from November24, 2009 to March, 2010. (London Supp. Affd. ¶5); (Reinke Affd. ¶3-23, Ex. A-C [Filing Nos. 21-5, 21-6, 21-7]);(Westland Affd. ¶4-9).

11. At the time of his intake on November 24, 2009, Plaintiff was in possession of a Cam walker boot and a bag of prescription medications, which consisted of Omeprazole, Lisinopril, and Atenolol. (Reinke Affd. ¶5, 23, Ex. C, p. 1-2); (Westland Affd. ¶5, 9).

12. Plaintiff's jail file contains his completed intake medical questionnaire, as well as the progress notes from his initial standard medical screening/evaluation. (Reinke Affd. ¶4, 23, Ex. C, p. 9-14, 53). Defendants Westland, London, and Davis had no personal involvement in completing these procedures for Plaintiff.[5] (Westland Affd., ¶8-8.6) (Davis Affd. ¶3-4); (London Affd. ¶4-5); (London Supp. Affd. ¶7). Instead, a non-party intake deputy completed the intake medical questionnaire with Plaintiff, and the initial medical screening was done by Defendant Pamela Reinke. (Reinke Affd. ¶4, 23, Ex. C, p. 9-14,53).

_____

[5] This statement is partially controverted by Sullivan's declaration that "Defendant Westland performed the initial screening on Plaintiff" (Filing No. 29, ¶ 4).

13. According to Plaintiff's intake and medical screening records in his jail file, Plaintiff advised Defendant Reinke that about three months before coming to the jail, he had suffered a comminuted calcaneal fracture of the right foot (heel) and metatarsal fracture of his left foot, and had been treated at the V.A. Hospital in Omaha. (Reinke Affd. ¶6, 8, Ex. A, p. 9-10).

14. According to Defendant Reinke's progress notes from her initial screening evaluation of Plaintiff, he self-reported that he still needed crutches or a walking boot on his right foot only, and that his most recent treatment prior to his incarceration had been x-rays taken on October 30, 2009, at the V.A. Hospital in Omaha, with his next appointment scheduled to take place on December 11, 2009. (Reinke Affd. ¶6, 23, Ex. C, p. 11-14, 53).

15. Defendant Reinke's intention at the time of Plaintiff's self-report at the time of his medical screening was to secure Plaintiff's medical records from the V.A. Hospital to confirm the information he reported and determine how to proceed with continuing care. (Reinke Affd. ¶7).

16. Consistent with her intent, on the same day as Plaintiff's intake, November 24, 2009, Defendant Reinke secured Plaintiff's written authorization to obtain his medical records from the V.A. hospital, and sent a fax to this facility inquiring about Plaintiff's ongoing medical needs. (Reinke Affd. ¶8, Ex. A, p. 1-4).

17. The following day, November 25, 2009, Defendant Reinke received and reviewed a reply fax received from the V.A. Hospital in Omaha. (Reinke Affd. ¶8, Ex. A, p. 5-12). The faxed records from the V.A. Hospital on that date indicated that Plaintiff had been weight-bearing on his feet for a couple of weeks before October 30, 2009, and while his left foot had healed at that time, he was still experiencing some swelling and pain in the right foot only. (Reinke Affd. ¶8, Ex. A, p. 9). The V.A. records further indicated that Plaintiff could bear weight as tolerated on the right foot in his Cam boot walker and return in six weeks, at which time it was anticipated that he would be discharged from care. (Reinke Affd. ¶8-9, Ex. A, p. 9). There was no mention of any plantar fascitis diagnosis, nor specially made orthotic shoes or insoles, in these faxed records. (Reinke Affd. ¶8-10, Ex. A, p. 5-12).

18. The written records from the V.A. Hospital did not reference a specific date of any upcoming appointment for Plaintiff, and Reinke overlooked making further inquiry to confirm any specific date to schedule any further appointment for Plaintiff. (Reinke Affd.¶10, Ex. A, p. 9). After his initial medical screening immediately following intake, Plaintiff never again mentioned to any of the nursing staff any appointment scheduled with his outside provider. (Reinke Affd. ¶10).

19. The Sarpy County jail records indicate that Defendant Reinke was the only member of the jail staff who was responsible for interactions with the V.A. hospital about Plaintiff, and specifically, neither Westland, London, nor Davis was aware in 2009 of Reinke's actions regarding contacts with the V.A. Hospital regarding Plaintiff, nor did any of them know until the time of this litigation that the scheduling of a follow up medical appointment for Plaintiff had been overlooked by Reinke. (Westland Affd. ¶7-12); (London Supp. Affd.¶7); (Davis Affd. [Filing No. 21-2] ¶2-3).

20. Crutches present a serious safety concern in the jail facility because they can be used as a weapon, so Defendant Reinke authorized Plaintiff to use the alternative of his removable Cam walking cast boot during his incarceration. (Reinke Affd. ¶11); (Erhart Affd. [Filing No. 21-3] ¶1, 3, 5). Neither Westland, London, nor Davis had any personal involvement in this decision by Defendant Reinke. (Westland Affd. ¶7-12); (London Supp. Affd. ¶7); (Davis Affd. ¶2-3).

21. Plaintiff was permitted to use his removable Cam walking boot during the entire pertinent time period of his incarceration in Sarpy County, and it was left to Plaintiff's choice whether he wished to use it. (Reinke Affd. ¶11, 23, Ex. C, p. 8, 26, 33, 46, 53). Defendants Westland, London, or Davis never encouraged nor dissuaded Plaintiff's decisions as to when or whether he would use his walking cast. (Westland Affd. ¶7-12); (London Supp. Affd. ¶7); (Davis Affd. ¶2-3).

22. Defendant Reinke consulted with Sarpy County's contracted physician, Dr. Adrian Dreessen,[6] who approved Plaintiff's prescription medications that he had brought with him to jail, Omeprazole, Lisinopril, and Atenolol. (Reinke Affd. ¶5, 12, 23, Ex. C, p. 1, 8, 11,46-52, 53-54); (Westland Affd. ¶9). Neither Westland, London, nor Davis had any personal involvement in Dr. Dreessen's decisions on what medications were prescribed to Plaintiff. (Westland Affd. ¶7-12); (London Supp. Affd. ¶7); (Davis Affd. ¶2-3).

23. Within a few days of his intake, Plaintiff asked to be taken off of his Omeprazole medication, which he identified as a "stomach acid med," and to remove dietary restrictions, and these requests were granted by Defendant Reinke, however, jail records show that Plaintiff's other prescribed medications were administered as directed by Dr. Dreessen throughout the remainder of his incarceration at the Sarpy County Jail which ended on March of 2010. (Reinke Affd. ¶13, 23, Ex. C, p. 15-16, 22, 46-52, 54); (Westland Affd. ¶9). Neither London nor Davis had any personal involvement in how Plaintiff's prescription medications were handled, and Westland's only personal involvement with Plaintiff's prescription medications was to occasionally administer them to Plaintiff consistent with the physician's directions when she was called upon to do so while on duty. (Westland Affd. ¶7-12); (London Supp. Affd. ¶7); (Davis Affd. ¶2-3).

24. On December 1, 2009, Plaintiff completed a Nurse Request Form asking for an extra blanket to elevate his right foot to relieve swelling, and was seen the same day by Defendant nurse June Westland, who consulted with Plaintiff, observed slight swelling of the leg, and discussed with him the need to use other ways to elevate the foot when resting and his ability to purchase Ibuprofen. (Reinke Affd. ¶14, 23, Ex. C, p. 23-24, 54);(Westland Affd. ¶8.2).

25. Staff at the jail are instructed to avoid giving extra blankets to inmates when possible to promote orderly operations, security, and safety, because such items have been known to be used in suicide and/or

---

[6] Dr. Dreessen was named as a defendant in an amended complaint filed on February 2, 2015. All claims alleged against him, including a time-barred § 1983 claim, were dismissed by the court on September 1, 2015 (Filing No. 17).

escape attempts, and/or for bartering between inmates. (Erhart Affd. ¶1, 3, 4); (Westland Affd. ¶8.2).

26. On December 1, 2009, and again on January 22, 2010, Plaintiff purchased ibuprofen and this was administered to him on an as-needed basis continuing throughout the remainder of his incarceration at Sarpy County Jail. (Reinke Affd. ¶15, 23, Ex. C, p.17, 20, 27, 45, 48-50, 55); (Westland Affd. ¶9).

27. On December 3, 2009, Plaintiff again completed a Nurse Request Form asking for a second blanket to use for elevating his foot, and was seen the same day by head nurse Defendant Reinke, who consulted with Plaintiff and, consistent with Defendant Westland's prior decision, denied his request for another blanket but advised him to elevate the foot as much as possible using other methods. (Reinke Affd. ¶14, 23, Ex. C, p. 25-26, 54). Defendants nurse June Westland, Greg London, and Sheriff Jeff Davis had no personal involvement or knowledge of that decision by Defendant Reinke. (Westland Affd. ¶8.2);(London Supp. Affd. ¶7); (Davis Affd. ¶2-3).

28. On December 10, 2009, Plaintiff completed a Nurse Request form again requesting an extra blanket to elevate his foot, and was seen on December 12, 2009, by Defendant Reinke, who discussed with Plaintiff other options and advice for alternative ways to elevate his foot. (Reinke Affd. ¶14, 23, Ex. C, p. 28-29, 55). Defendants nurse June Westland, Greg London, and Sheriff Jeff Davis had no personal involvement or knowledge of that decision by Defendant Reinke. (Westland Affd. ¶8.2); (London Supp. Affd. ¶7);(Davis Affd. ¶2-3).

29. On January 13, 2010, during a nurse visit to check his blood pressure, Plaintiff asked to be taken off of "rec restriction" to get exercise, which request was granted by the nursing staff soon thereafter. (Reinke Affd. ¶16, 23, Ex. C, p. 19, 56). Neither nurse June Westland, Greg London, nor Sheriff Jeff Davis had any personal involvement in that decision. (Westland Affd. ¶7-12); (London Supp. Affd. ¶7); (Davis Affd. ¶2-3).

30. Also on January 13, 2010, Plaintiff completed a Store Request/Account Inquiry Form seeking permission to purchase "shoes

like the trustees wear" to support his foot during rec time, and referenced this shoe request in a January 24, 2010 Nurse Request Form regarding a complaint of naval [*sic*] area bleeding, as well as in a nurse visit on January 25, 2010. (Reinke Affd. ¶16, 23, Ex. C, p. 33-36, 57). Defendant Reinke responded to these shoe requests by Plaintiff by discussing with him that he could not have these particular shoes as they are only available to trustees, but suggested that he walk during rec without his Cam boot and then elevate his foot for as long as he walked. (Reinke Affd. ¶16, 23,Ex. C, p. 33-36, 57). Defendants nurse June Westland, Greg London, and Sheriff Jeff Davis had no personal involvement in that decision by Reinke. (Westland Affd. ¶7-12); (London Supp. Affd. ¶7); (Davis Affd. ¶2-3).

31. On February 19, 2010, Plaintiff completed a Nurse Request Form alleging for the first time that he had a previous diagnosis of plantar fascitis from the V.A. Hospital, and indicating that he had been prescribed special shoes for this condition. (Reinke Affd. ¶17,23, Ex. C, p. 41, 59). Plaintiff had not disclosed this condition during completion of his intake questionnaire nor during his initial medical screening with Defendant Reinke back in November of 2009.[7] (Reinke Affd. ¶4, 23, Ex. C, p. 9-14, 53).

32. On February 26, 2010, Defendant Reinke sent a fax to the V.A. Hospital in an effort to obtain information regarding Plaintiff's alleged diagnosis of plantar fascitis and any associated treatment needs. (Reinke Affd. ¶18, 23, Ex. B, p. 1-4; Ex. C, p. 41).

33. On March 1, 2010, the V.A. Hospital sent a reply fax containing medical records which indicated that Plaintiff had been diagnosed with plantar fascitis in 2007 and at that time had been referred to a vendor for custom shoe inserts. (Reinke Affd. ¶18, Ex. B, p.5-14).

34. Defendant Reinke was aware that the custom orthotic insoles or "special shoes" Plaintiff wanted consist of a hard plastic material, and so in early March 2010 she discussed with Defendant Captain Greg London

---

[7] This statement is partially controverted by Sullivan's declaration that during intake his "injuries w[e]re detailed and expressed to Westland, inclusive of his plantar fascitis and on-going treatment yet to be endured with V.A. Hospital" (Filing No. 29, ¶ 4).

whether these presented a jail security concern. (Reinke Affd. ¶18-19, 23, Ex. C, p. 58-59); (London Affd. ¶1-6); (Erhart Affd. ¶1, 3, 5); (London Supp. Affd. ¶6-7). London advised Reinke that he would be concerned that this type of material could be fashioned into a weapon and jeopardize security, so an alternative treatment, if available, would be preferable. (Reinke Affd. ¶18-19, 23, Ex. C, p. 58-59); (London Affd. ¶1-6); (Erhart Affd. ¶1, 3, 5). London left the ultimate decision to Reinke with the understanding that she would make the decision with her professional medical judgment being the paramount consideration. (London Supp. Affd. ¶6-7).

35. In her professional judgment, Defendant Reinke determined that an alternative treatment option for Plaintiff's plantar fascitis would be appropriate, and discussed with Plaintiff on March 1-2, 2010, stretching exercises he could do for his foot that she believed would alleviate any need for the special shoes. (Reinke Affd. ¶20, 23, Ex. C, p. 58-59); (London Affd. ¶1-6). Defendants nurse June Westland and Sheriff Jeff Davis had no personal involvement in that decision by Reinke. (Westland Affd. ¶7-12); (London Supp. Affd. ¶7); (Davis Affd. ¶2-3).

36. Plaintiff Sullivan never complained thereafter about his plantar fascitis or foot pain before he left the facility a couple of weeks later, but rather, in that time period he only complained about other unrelated medical issues, which were addressed by the nursing staff. (Affd. Reinke, Ex. C, p. 43-44, 58-59); (Westland Affd. ¶8.5, 8.6, 10-11).

37. On March 16, 2010, Plaintiff was released from Sarpy County Jail for purposes of a transfer to the State Penitentiary based on his sentence for a felony burglary conviction. (Reinke Affd. ¶23, Ex. C, p. 7-8); (London Affd. ¶1-6); (Amended Compl., ¶21).

38. Over two years after his transfer to the State Penitentiary, on October 24, 2012, Plaintiff filed his Complaint herein in the Sarpy County District Court. (See Complaint).

39. Defendant Sarpy County Sheriff Jeff Davis has never personally met Plaintiff, and was entirely unaware of Plaintiff's incarceration or alleged medical needs until being served with the Complaint herein, and had no

personal involvement whatsoever in any events or omissions alleged in the Complaint. (Davis Affd. ¶1-4); (Davis Supp. Affd. ¶1-6).

40. Defendant Captain Greg London never had any direct contact with Plaintiff, nor was he advised by staff of any medical issues involving Plaintiff or complaints by him, except the single instance of being sought out for his opinion by Defendant Reinke in early March 2010 regarding whether the shoe inserts sought by Plaintiff presented a jail security concern. (London Affd. ¶1-6); (London Supp. Affd. ¶6-7).

41. Defendant nurse June Westland did not make any of the decisions with respect to Plaintiff's medical care at the jail that are specifically complained about in Plaintiff's pleading, as her role was limited to administering his medication as prescribed, and evaluating Plaintiff's other unrelated medical issues.[8] (Westland Affd. ¶3-11). Plaintiff told Westland he planned to sue her boss and the County for unspecified reasons regarding his medical care, but did not complain about any decision she had made. (Westland Affd.¶12).

42. Defendant Reinke did not believe, in her professional medical judgment, that Plaintiff required any medical care outside of the treatment options afforded to him by her at the jail and she never acted with any malice or ill will toward Plaintiff. (Reinke Affd. ¶10, 21, 22).

(Filing No. 22 at CM/ECF pp. 3-12). Except as specifically noted above, these statements of fact have not been controverted by Sullivan and are deemed admitted. *See* NECivR 56.1(b)(1); *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact ... is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"); Fed. R. Civ. P. 56(e)(2) (" If a party ... fails to properly address another party's assertion of

---

[8] This statement is partially controverted by Sullivan's declaration that he requested "Sarpy County Jail Officials, particularly Westland, to contact V.A. Hospital to determine what medical needs he was being treated for and what Medication(s) and treatment was needed, [and that] Westland refused to contact V.A. Hospital initially during intake (Filing No. 29, ¶ 6).

fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion").

*2. Discussion*

The doctrine of qualified immunity requires "an individualized analysis of each officer's alleged conduct." *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013); *Walton v. Dawson*, 752 F.3d 1109, 1125 (8th Cir. 2014). Further, supervisors cannot be held liable under 42 U.S.C. §1983 on a theory of respondeat superior; in other words, they are not accountable for the misdeeds of their agents. *See Wagner v. Jones*, 664 F.3d 259, 275 (8th Cir. 2011). Supervisors can, however, incur liability for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).

*a. Sheriff Jeff Davis*

Under Neb. Rev. Stat. § 23-1703, a county sheriff has general charge and custody of a county jail and its prisoners, but can discharge his jail-related duties through deputies. Sheriff Davis has delegated responsibility for managing the day-to-day operations of the jail to a captain and a lieutenant. Civilian staff at the jail includes four registered nurses and an independently contracted physician who attend to the medical needs of detainees and inmates. In the usual course of operations, Sheriff Davis does not have personal contact or interactions with detainees and inmates held at the Sarpy County Jail, or any direct involvement in their medical care.

Sheriff Davis's affidavit establishes that he had no knowledge Sullivan was incarcerated at the jail, or that during his incarceration Sullivan made any complaints about unmet medical needs. Greg London, who was jail captain at the time, confirms that he never communicated with Sheriff Davis about Sullivan.

Because there is no evidence Sheriff Davis had any knowledge of Sullivan's alleged medical needs, he is entitled to the entry of summary judgment. *See Vaughn v. Green County*, 438 F.3d 845 (8th Cir. 2006) (county sheriff entitled to qualified immunity when he had no personal interaction with the detainee and there was no evidence suggesting he was actually aware of the detainee's specific medical symptoms and complaints while incarcerated; sheriff reasonably delegated to others certain duties with respect to direct inmate supervision).

### b. Captain Greg London

During Sullivan's incarceration at the Sarpy County Jail, Greg London was the jail captain in charge of day-to-day operations. The only issue ever brought to Captain London's attention regarding Sullivan's medical needs was when nurse Pamela Reinke sought his guidance about a medical request form submitted by Plaintiff for "special shoes" with hard plastic insoles for treatment of plantar fascitis. The evidence shows that London expressed a concern about jail security, but allowed nurse Reinke to exercise her medical judgment on the matter. Reinke concluded that stretching exercises were a viable alternative. "[I]t is not deliberate indifference when an official relies on the recommendations of a trained professional." *Drake ex. rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006). The evidence does not support a finding that Captain London was deliberately indifferent to Sullivan's plantar fascitis.

### c. Nurse June Westland

According to the defendants' evidence, the only personal involvement that Westland had with Sullivan's medical care regarding his feet was to deny his initial request for an extra blanket to elevate his foot due to the security risks, which decision was reaffirmed later on two different occasions by head nurse Reinke. Otherwise, Westland merely treated Sullivan at sick call on various occasions for medical issues unrelated to the matters raised in the complaint.

The defendants' evidence also indicates that Sullivan's intake was handled by a sheriff's deputy and the head nurse, Pamela Reinke, but Sullivan contends the intake was conducted by Westland, who refused to contact the V.A. Hospital to obtain his medical records. The evidences shows, however, that the V.A. Hospital was promptly contacted by Reinke on November 24, 2009, and that Sullivan's medical records were received the following day. Thus, Sullivan's claim that he suffered pain and swelling in his foot for 7 days following his intake at the jail cannot reasonably be attributed to Westland's alleged refusal to contact the V.A. Hospital.

Sullivan also claims he told Westland about his plantar fascitis condition at intake, but there is no evidence that the condition, which had been diagnosed in 2007, required any treatment at the time.[9] But even assuming that the condition was an objectively serious medical need of which Westland had actual knowledge, there is no evidence that she deliberately disregarded the condition as, for example, by "intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (quoting *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009)). "Deliberate indifference" requires "more than ordinary lack of due care ...." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). On the evidence presented, Westland is entitled to qualified immunity.

### 3. Conclusion

The defendants have shown there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

---

[9] Records subsequently obtained from the V.A. Hospital showed that the plantar fascitis only affected Sullivan's left foot (Filing No. 21-6 at CM/ECF pp. 9-14). When Sullivan was seen at the V.A. orthopedic clinic on November 1, 2009, regarding his right calcaneus and left metatarsal fractures, he was weightbearing and did not have any symptoms on the left foot (Filing No. 21-6 at CM/ECF p. 8).

Accordingly,

IT IS ORDERED:

1.     Plaintiff's motion for reconsideration (Filing No. 19) is denied.

2.     Defendants' motion to strike (Filing No. 28) is granted in part and denied in part, as follows:

   a.     Plaintiff's Reply, Answer, and Objection (Filing No. 25) is stricken from the court file;

   b.     The following paragraphs, or portions of paragraphs, are stricken from Plaintiff's Declaration (Filing No. 26):

      i.     Paragraphs 2, 3, 5, 9, and 10 are stricken in their entirety.

      ii.    In paragraph 4, the second sentence is stricken.

      iii.   In paragraph 6, the second and third sentences are stricken.

      iv.    In paragraph 7, the introductory phrase, "Because of the delay in contacting V. A. Hospital," is stricken.

      v.     In paragraph 8, the concluding language, "where upon he made request to obtain crutches, the request was denied by London and Reinke; according to Sheriff's (Davis) policy, as told to Plaintiff," is stricken.

   c.     In all other respects, the motion is denied.

3.    Plaintiff's Request for Oral Testimony (Filing No. 30) is denied.

4.    Defendants' Motion for Summary Judgment (Filing No. 20) is granted, and Plaintiff's action is dismissed with prejudice.

5.    Judgment shall be entered by separate document.

DATED this 4th day of February, 2016.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge